1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11    NINA FISHER,

12              Plaintiff,                    No. 2:11-cv-3396 JAM GGH

13         vs.

14    KOHL'S DEPARTMENT STORES, INC.,

15              Defendant.                    ORDER

16    _____/

17              Presently pending before the court is plaintiff's motion to compel production of

18    documents, originally filed on May 24, 2012 and noticed for hearing on June 14, 2012.  (Dkt. No.

19    26.)  The parties filed a joint statement pursuant to E.D. Cal. L.R. 251 on June 7, 2012.  (Dkt.

20    No. 30.)  At the June 14, 2012 hearing, Joshua Boyce appeared on behalf of plaintiff and

21    Matthew Noel appeared on behalf of defendant.  After considering the parties' joint statement

22    and supporting documentation, the oral arguments of counsel, and the applicable law, the court

23    now issues the following order.

24    BACKGROUND

25              This diversity action, removed from state court on December 21, 2011, arises

26    from a December 22, 2009 accident during which plaintiff Nina Fisher allegedly slipped and fell

1

on a discarded hanger in defendant Kohl's Department Stores, Inc.'s Roseville store.  Plaintiff

purportedly suffered serious resulting injuries, including a comminuted fracture of the proximal

left humerus and a fracture of the distal right femur above the knee, requiring surgical

intervention.  Plaintiff sues defendant on theories of negligence and premises liability.

According to plaintiff, she suffers from dementia, and at her April 5, 2012

deposition she could not specifically recall anything that had happened within five minutes after

the accident, including whether she spoke to any Kohl's employees, whether she told anyone in

the store about a hanger, or whether anyone from Kohl's provided her with assistance after the

accident.  (Dkt. Nos. 28-15, 28-16.)  Mary Ann Haughner, an Assistant Store Manager who

apparently authored an incident report regarding the accident, testified at her April 30, 2012

deposition that she did not recall the incident, speaking with plaintiff or anyone else regarding the

incident, or assisting plaintiff at the time of the incident.  (Dkt. No. 28-14.)  Ms. Haughner also

did not recall any other slip-and-fall accidents at defendant's Roseville store.  (Id.)

On March 20, 2012, plaintiff propounded several requests for production of

documents to which defendant filed responses on April 23, 2012.  For purposes of this motion,

the following 6 requests are technically at issue: documents relating to "prior or subsequent slip

and fall accidents," including any lawsuits that were filed, from January 1, 2001 to the present

(Request No. 5); documents that identify or refer to any persons who witnessed the incident

(Request No. 8); documents identified or referred to in defendant's March 6, 2012 initial

disclosure statement (Request No. 9); reports, writings, and/or photographs relating to the

investigation of the incident (including conversations with plaintiff, inspection of the area where

the incident occurred, instructions to defendant's employees following the incident, and

interviews of any witnesses) (Request No. 21); any incident reports filed by defendant's

employees relating to events giving rise to the incident (Request No. 25); and any incident

reports and/or written statements made by defendant's employees which were prepared in the

regular course of business regarding the events as they relate to the litigation (Request No. 26).

1  (Dkt. Nos. 28-4, 28-5.)

2         However, after further meet-and-confer efforts and in light of defendant's service

3  of privilege logs on May 17, 2012 and May 18, 2012, the parties now agree that the motion

4  essentially only involves the discoverability of two incident reports: (a) a December 22, 2009

5  incident report regarding the accident at issue prepared by Assistant Store Manager Mary Anne

6  Haughner; and (b) a February 16, 2009 incident report regarding a previous accident prepared by

7  Store Manager Valerie Donnelly.

8         According to plaintiff, these incident reports are relevant to defendant's potential

9  liability and prior notice of a possibly dangerous condition(s) in its store.  Plaintiff claims the

10  need for their disclosure here is even greater due to plaintiff's amnesia and Ms. Haughner's

11  present inability to recall anything regarding the incident.  Plaintiff argues that defendant's

12  various boilerplate objections as to vagueness, ambiguity, overbreadth, relevance, compound

13  form, as well as objections based on trade secret protection, are without merit.  Plaintiff also

14  contends that defendant's objections based on the attorney-client privilege and the attorney work

15  product doctrine fail, and that in any event, these objections were waived when defendant failed

16  to make timely and specific objections to several of the requests on these grounds.[1]  Defendant

17  disputes that the attorney-client privilege and attorney work product objections were waived and

18  contends that the incident reports are privileged and subject to work product protection.

19  <u>DISCUSSION</u>

20         In diversity cases, issues regarding privilege are determined under the state law

21  that governs decision of the case.  <u>See</u> Fed. R. Evid. 501; <u>Star Editorial, Inc. v. United States</u>

22

23         [1] In its responses, defendant included "general objections" to any request that calls for
information protected by the attorney-client privilege and the attorney work product rule.
24  Additionally, defendant specifically asserted objections on the basis of the attorney-client
privilege and/or the attorney work product doctrine to Request Nos. 8, 25, and 26, but did not
25  specifically assert these objections in response to Request Nos. 5, 9, and 21.  However, in the
course of subsequent meet-and-confer correspondence, defendant's counsel raised these
26  objections with respect to all six requests.

1    District Court for the Central District of California, 7 F.3d 856, 859 (9th Cir. 1993).  Thus, in

2    determining the existence or extent of the attorney-client privilege in this case, California law

3    controls.  Under California law, the attorney-client privilege confers a privilege on the client "to

4    refuse to disclose, and to prevent another from disclosing, a confidential communication between

5    client and lawyer...."  Cal. Evid. Code § 954.  The phrase "confidential communication between

6    client and lawyer" means "information transmitted between a client and his or her lawyer in the

7    course of that relationship and in confidence by a means which, so far as the client is aware,

8    discloses the information to no third persons other than those who are present to further the

9    interest of the client in the consultation or those to whom disclosure is reasonably necessary for

10   the transmission of the information or the accomplishment of the purpose for which the lawyer is

11   consulted, and includes a legal opinion formed and the advice given by the lawyer in the course

12   of that relationship."  Cal. Evid. Code § 952.

13              "The party claiming the privilege has the burden of establishing the preliminary

14   facts necessary to support its exercise, i.e., a communication made in the course of an attorney-

15   client relationship.  Once that party establishes facts necessary to support a prima facie claim of

16   privilege, the communication is presumed to have been made in confidence and the opponent of

17   the claim of privilege has the burden of proof to establish the communication was not

18   confidential or that the privilege does not for other reasons apply."  Costco Wholesale Corp. v.

19   Superior Court, 47 Cal. 4th 725, 733 (2009) (internal citations omitted).

20              "[T]o determine whether a communication is privileged, the focus of the inquiry

21   is the dominant purpose of the relationship between the parties to the communication.  Under

22   that approach, when the party claiming the privilege shows the dominant purpose of the

23   relationship between the parties to the communication was one of attorney-client, the

24   communication is protected by the privilege."  Clark v. Superior Court, 196 Cal. App. 4th 37, 51

25   (2011).  As the California Supreme Court explained, when deciding whether a corporate

26   employee reporting to the corporation's attorney was speaking on behalf of the corporation so

4

that the report was in effect a communication from the corporation to the attorney:

> the dominant-purpose test determines whether the relationship
> between the attorney and the corporate employee is an attorney-
> client relationship; if the corporation's dominant purpose in
> requiring the employee to make a statement is the confidential
> transmittal to the corporation's attorney of information emanating
> from the corporation, the communication is privileged.  And as we
> have explained, because the privilege protects the *transmission* of
> information, if the communication is privileged, it does not become
> unprivileged simply because it contains material that could be
> discovered by some other means.

Costco Wholesale Corp., 47 Cal. 4th at 734-35 (emphasis in original).

"However, the attorney-client privilege only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication." State Farm Fire & Casualty Co. v. Superior Court, 54 Cal. App. 4th 625, 639 (1997) (emphasis in original).  Furthermore, "documents prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel." Wellpoint Health Networks, Inc v. Superior Court, 59 Cal. App. 4th 110, 119 (1997).  The California Supreme Court's opinion in Costco made clear that these well-established principles remain intact.  Costco Wholesale Corp., 47 Cal. 4th at 735 (holding that the privilege "does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney").

In this case, defendant's privilege log merely indicates that the identity and position of the recipients of both the February 16, 2009 and December 22, 2009 incident reports were "Kohl's Department Stores, Inc."  (Dkt. No. 28-12.)  Assistant Store Manager Mary Anne Haughner testified that if a customer gets injured in the store, the standard protocol is for a manager to complete an incident report, called the "accident sheet," containing the date; the customer's name, address, and contact information; the customer's description of what happened; the names and statements of any witnesses to the accident; and to take a picture of the

area where the accident occurred.  (Dkt. No. 28-14.)  The manager then calls the information into

the Kohl's accident hotline, a "center that takes any customer or associate accidents and then

goes on to insurance."  (Id.)  Defendant also submitted the declaration of Kimberly Stuart,

another Assistant Manager at the Kohl's Roseville store, which stated, in part, that:

> As part of defendant's policies and procedures, it requires of its
> employees that incident reports such as those at issue in this
> motion be generated in response to accidents that were claimed to
> have occurred.  These incident reports are then transmitted to
> defendant's corporate offices located in Menomonee Falls,
> Wisconsin and are intended to be confidential for transmission to
> and use by attorneys defending petitioner in litigation arising out of
> such claims.  These incident reports were transmitted to
> defendant's risk management department and corporate counsel for
> use in defending litigation arising out of these respective claims.

(Dkt. No. 30-2 at 10-11.)  After the hearing, defendant also filed a copy of the relevant Kohl's

policies and procedures relating to accident investigation pursuant to the court's order.  (Dkt. No.

34-1.)  Those policies state, in part, that:

> Incident Investigation has one primary goal - to prevent recurrence.
> It can also help in auditing the effectiveness of your overall safety
> program...It is important for the store management team to educate
> Associates about the importance of incident investigation and to
> communicate that the true objective is to make the workplace safer
> for everyone.

(Dkt. No. 34-1 at 2-3.)  The policies then continue to instruct the store employees, after taking

appropriate care of the customer, to take certain steps to document the incident, not to discuss the

incident with *any* attorneys without prior approval from the Corporate Risk Management

Department, and to contact the Corporate Risk Management Department for further directions.

(Dkt. No. 34-1 at 3.) (Emphasis added).  It states that the Risk Management Department would

notify the employees in advance if one of defendant's attorneys would be contacting them.  (Id.)

The policies also suggest that accident reports are at some point forwarded to a claims adjuster,

presumably working for defendant's insurer(s).  (Dkt. No. 34-1 at 4.)

\\\\\

1    In light of the above, the court finds that defendant has failed to make a sufficient

2 showing of the preliminary facts necessary to application of the attorney-client privilege.  It is

3 clear that these incident reports are routinely prepared by employees after an accident in a Kohl's

4 store in the ordinary course of business and pursuant to corporate policy, and that they contain

5 essentially factual information.  According to defendant's own policies, the dominant purpose of

6 these statements, independently prepared by store employees, is to prevent recurrence and make

7 the workplace safer – not to communicate information to or seek advice from defendant's

8 attorneys.[2]  The mere fact that these statements may ultimately be forwarded to defendant's in-

9 house counsel (or outside counsel), for example when litigation ensues, does not transform them

10 into privileged documents.

11    Also, the evidence as to where the incident reports are routinely sent is at best

12 ambiguous – the privilege log merely states that the recipient here was "Kohl's Department

13 Stores, Inc."; Ms. Haughner suggested that the incident reports are called into a hotline "center"

14 and then goes to "insurance"; and Ms. Stuart indicated that incident reports are sent to

15 defendant's "corporate offices," from where they are apparently forwarded to the "risk

16 management department," corporate counsel, and/or outside counsel if litigation ensues.  In turn,

17 defendant's policies and procedures only suggest transmission to a claims adjuster and possibly

18 the "risk management department."  Even if it were anticipated that these independent factual

19 statements may prove useful in potential future litigation, there is no clear indication that they

20 were in the first instance directed to an attorney for legal advice.

21    As such, the court concludes that defendant has failed to make a sufficient

22 showing that the dominant purpose of the incident reports was transmission to an attorney for

23

24    [2] Although defendant's counsel at the hearing made much of the fact that defendant's
policies and procedures regarding accident investigation were developed by defendant's
25 attorneys, that is not the pertinent question for purposes of determining whether the reports at
issue are privileged.  Instead, as noted above, the court must look to the dominant purpose of the
26 *relationship* between the parties to the communication.

1   purposes of seeking legal advice.  Stated differently, defendant failed to make a preliminary

2   showing that the dominant purpose of the relationship between the parties to the communications

3   at issue was attorney-client communication.

4          Defendant's reliance on Payless Drug Stores, Inc. v. Superior Court, 54 Cal. App.

5   3d 988 (1976) is misplaced.  In Payless, the plaintiff sought to discover accident reports prepared

6   by defendant's employees on pre-printed forms supplied, and required to be completed by, the

7   employer's insurance company.  Id. at 989-91.  The defendant supplied evidence that both the

8   insurance carrier and the defendant intended the reports to be confidential for transmission to and

9   use by attorneys provided by the insurance company to defend the defendant in litigation arising

10  out of the accidents.  Id. at 991.  The Payless court found that "[e]vidence to the effect that the

11  report in question was prepared by an employee of the corporate employer on the date of the

12  accident on a preprinted form furnished by the insurance carrier headed 'Public Liability

13  Accident-Report Every Accident Immediately to Harbor Insurance Company' is sufficient to

14  establish the dominant purpose."  Id.  By contrast, in this case, defendant provided no evidence

15  that the incident reports were prepared primarily for, and at the direction of, defendant's liability

16  insurance company and its appointed attorneys.  Instead, while there are some indications that

17  these type of incident reports are forwarded to defendant's insurers, it appears that they were

18  prepared pursuant to a protocol and course of business established by Kohl's.

19         Furthermore, it seems clear that the incident reports do not qualify for attorney

20  work product protection.  Since the attorney work product doctrine involves a procedural

21  consideration and not application of a substantive privilege, federal law applies.  Great American

22  Assurance Co. v. Liberty Surplus Ins. Corp., 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009);

23  Connolly Data Systems, Inc. v. Victor Technologies, Inc., 114 F.R.D. 89, 95 (S.D. Cal. Feb. 17,

24  1987).  Fed. R. Civ. P. 26(b)(3) provides, in part, that:

25             (A) Ordinarily, a party may not discover documents and tangible
               things that are prepared in anticipation of litigation or for trial by or
26             for another party or its representative (including the other party's

8

1    attorney, consultant, surety, indemnitor, insurer, or agent).  But,
     subject to Rule 26(b)(4), those materials may be discovered if: (i)
2    they are otherwise discoverable under Rule 26(b)(1); and (ii) the
     party shows that it has substantial need for the materials to prepare
3    its case and cannot, without undue hardship, obtain their
     substantial equivalent by other means.  (B) If the court orders
4    discovery of those materials, it must protect against disclosure of
     the mental impressions, conclusions, opinions, or legal theories of
5    a party's attorney or other representative concerning the litigation.

6    Thus, "the pertinent authority divides work product into two general categories – 'qualified'

7    work product which protects an attorney's factual investigations, and 'absolute' work product

8    which protects an attorney's mental impressions, legal strategies and so forth.  The party seeking

9    qualified work product has the burden of demonstrating a 'substantial need' for the qualified

10   work product, as well as an inability to obtain the information from other sources without undue

11   hardship." Doubleday v. Ruh, 149 F.R.D. 601, 607 (E.D. Cal. 1993).

12         Here, defendant failed to show that the incident reports at issue were prepared at

13   the specific direction of counsel in anticipation of litigation rather than pursuant to a general

14   protocol or course of business established by defendant.  "[U]nlike interview notes prepared by

15   counsel, statements written or recorded independently by witnesses neither reflect an attorney's

16   evaluation of the case nor constitute derivative material, and therefore are neither absolute nor

17   qualified work product." Nacht & Lewis Architects, Inc. v. Superior Court, 47 Cal. App. 4th

18   214, 218 (1996).  "Defendants cannot shield independently prepared witness statements by

19   having their employees turn such statements over to defendants' attorney during his interviews

20   with the employees." Id. at n.2.[3]  Moreover, even if the incident reports could be classified as

21   qualified work product,[4] they would be discoverable under the substantial need/undue hardship

22

23         [3] Although Nacht involved application of California law, courts have recognized that
     federal and California law regarding attorney work product are similar and often lead to the same
24   result. Fireman's Fund Ins. Co. v. Superior Court, 196 Cal. App. 4th 1263, 1280 (2011).  As
     such, Nacht is considered to be persuasive authority by this court.

25         [4] Because the incident reports clearly do not contain attorney mental impressions,
     conclusions, opinions, or legal theories, defendant cannot plausibly contend that they constitute
26   absolute work product.

                                            9

theory in light of plaintiff's amnesia and plaintiff's counsel's apparent inability to obtain the information by other means, such as by deposition of the Assistant Store Manager, Mary Anne Haughner, who does not recall the incident or preparing her report regarding the incident.

Because the court finds that the incident reports are not protected from disclosure by the attorney-client privilege or attorney work product protection, it is unnecessary to decide whether defendant waived any of these objections.  The court further finds that defendant's remaining boilerplate objections as to vagueness, ambiguity, overbreadth, relevance, compound form, as well as objections based on trade secret protection, are plainly without merit.  Defendant failed to identify specifically how the requests are vague, ambiguous, overbroad, or irrelevant, and did not seek a protective order on that basis.   Defendant also failed to explain how the incident reports involve any trade secret material.  Accordingly, the court concludes that the incident reports should be produced in response to plaintiff's requests.

For the reasons discussed above, IT IS ORDERED that:

1.  Plaintiff's motion to compel production of documents (dkt. nos. 26, 30) is GRANTED.

2.  Defendant shall produce the February 16, 2009 and December 22, 2009 incident reports, identified in its privilege log dated May 18, 2012, within three (3) days of the date of this order.

DATED: June 22, 2012

                              /s/ Gregory G. Hollows
                    UNITED STATES MAGISTRATE JUDGE

GGH/wvr
Fisher.3396.mtc.wpd

10